Elene B. GLASSMAN, Appellant,

v.

Meryl B. GOODFRIEND, Appellee.

No. 14–09–00522–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 2, 2011.

Elene B. Glassman, Houston, pro se.

John Fason, Houston, for Appellee.

Before the court en banc.

## EN BANC OPINION

### CHARLES W. SEYMORE, Justice.

Appellant Elene B. Glassman's motion for panel rehearing is denied, and her motion for rehearing en banc is denied as moot. On its own motion, this court grants en banc rehearing to secure uniformity in the court's precedent regarding the legal standard for imposing sanctions under Texas Rule of Appellate Procedure 45.

Glassman appeals from a final order in garnishment obtained by appellee, Meryl B. Goodfriend, to satisfy an underlying judgment. Glassman, an attorney, appears *pro se* in this appeal. Goodfriend contends this appeal is frivolous and re-

quests sanctions. We affirm the final order in garnishment and assess $2,500 in sanctions against Glassman.

## BACKGROUND

Glassman and Goodfriend are sisters. Their parents established an inter vivos trust with Glassman appointed as trustee. Under its provisions, the trust was to be discharged and the assets distributed equally to Glassman and Goodfriend upon the last surviving parent's death. In 2004 (after the last parent died), Goodfriend filed a petition to compel an accounting, which she later amended to also compel distribution of trust assets, alleging Glassman had failed to comply with Goodfriend's requests for performance of these duties. Goodfriend also applied for injunctive relief to preserve the status quo of trust property, alleging she believed Glassman might wrongfully disburse assets or remove them beyond the court's jurisdiction.

On January 31, 2005, the trial court signed an order requiring an accounting by a date certain.[1] The court also ordered the parties to mediate following the accounting. Goodfriend subsequently filed a motion for contempt, contending Glassman had not complied with the order for the accounting. The parties then mediated and signed an agreement on various matters. On May 4, 2005, the trial court reduced to interlocutory judgment several items of this agreement, including Goodfriend's willingness to pass an upcoming hearing set on her previous motion for contempt in exchange for Glassman's providing the accounting by another date certain.

Goodfriend later again moved for contempt, alleging Glassman failed to provide

---

1. The trial court referred some matters for hearing by an associate judge, and the court then signed the recommended order or judgment. However, we will refer to all actions as taken by "the trial court," except when the fact that a ruling was recommended by the associate judge is pertinent to Glassman's appellate complaints.

the accounting as specified in the May 4, 2005 judgment. The trial court signed an order requiring Glassman to provide the accounting within seven days or serve three days in jail. When Glassman failed to comply with that order, Goodfriend filed a motion to enforce. On July 20, 2005, after a hearing, the trial court found Glassman in contempt of the May 4, 2005 judgment and ordered her confined for three days.[2]

Subsequently, Goodfriend amended her request for injunctive relief, alleging Glassman had mismanaged the trust and still refused to provide the accounting. Glassman then filed a motion to recuse both the trial judge and associate judge, suggesting they had committed various procedural irregularities, engaged in ex parte communications, and lacked impartiality. Another judge assigned to decide the recusal matter denied the motion, found it was filed to delay a hearing originally scheduled on Goodfriend's application for injunctive relief, and sanctioned Glassman $2,000.

The trial court then resumed proceedings in October 2005 on the application for injunctive relief. On October 24, 2005, after having issued a temporary restraining order, the trial court signed a temporary injunction and order removing Glassman as trustee, terminating the trust, and appointing a successor trustee to wind up the trust. The court also enjoined Glassman from exercising control over any trust assets and ordered her to relinquish the assets and records to the successor trustee. Thereafter, the successor trustee performed her duties, partial distributions of assets were made to Goodfriend, and the trust was ultimately closed in August 2007 after a final accounting.

In the meantime, on the same day that the trial court issued the temporary injunction, Goodfriend filed a second amended petition alleging claims against Glassman for breach of fiduciary duty based on her various actions and omissions as trustee and breach of contract for her failure to comply with several provisions in the parties' mediation agreement. Goodfriend requested an accounting, distribution of trust assets, damages, attorneys' fees, removal of Glassman as trustee, and a ruling that Glassman must forfeit all trustee fees, profits, and improper benefits she obtained by breach of the fiduciary relationship.

While these claims were pending, the trial court again sanctioned Glassman $9,624.09, finding she had engaged in "a pattern of discovery abuse and misconduct," including disregarding prior court orders compelling discovery, failing to provide the accounting as previously ordered, disobeying the temporary injunction by refusing to produce trust records, filing the groundless motion to recuse, and failing to pay the sanctions assessed for filing the motion to recuse. As requested by Goodfriend, the trial court converted both sanctions orders to an enforceable money judgment for $11,624.09. This judgment was satisfied via a garnishment proceeding instituted by Goodfriend for funds held by Glassman at Raymond James & Associates, Inc.

On June 9, 2006, a bench trial was conducted on the remaining claims asserted in Goodfriend's second amended petition. Although notified of the setting, Glassman did not attend. Goodfriend presented evidence supporting her claims. On June 27, 2006, the trial court signed a final judgment (1) finding that Glassman "knowingly and willfully breached her fiduciary duty

---

**2.** Glassman filed a habeas corpus petition which became moot when she was released early.

as Trustee ... including malfeasance and defalcation," (2) awarding Goodfriend $307,948.63 in damages (the total damages found minus partial distributions of trust assets already made), $45,114.47 in pre-judgment interest, $50,000 in exemplary damages, conditional appellate attorneys' fees, and post-judgment interest, (3) ruling that Glassman's liability under the judgment exceeded her beneficial interest in the trust and thus her interest was awarded to Goodfriend, (4) ruling that Glassman take nothing on her counterclaim for declaratory judgment that a condominium owned by the parties' mother (which passed under her will) should be an asset of the trust, and (5) ordering Glassman to relinquish to Goodfriend, and refrain from exerting control over, any trust property. Glassman did not file a timely motion for new trial or equivalent and did not timely appeal.

Thereafter, the June 27, 2006 judgment was partially satisfied via garnishment proceedings of funds held by Glassman at Raymond James and Charles Schwab & Co. Goodfriend then instituted the garnishment proceeding that resulted in the order at issue in this appeal. Specifically, in August 2006, Goodfriend filed an original application for writ of garnishment after judgment directed to JP Morgan

Chase Bank ("Chase"), which was assigned a separate cause number from the underlying suit. Chase answered that it was indebted to Glassman for $3,723.31 and she held one or more safe deposit boxes at the institution. In March 2009, Goodfriend filed a motion for final order in garnishment.[3] Glassman moved to set aside the garnishment, arguing the trial court had no jurisdiction to order the underlying accountings, render the underlying judgment, or issue a writ of garnishment. On April 30, 2009, after a hearing, the trial court signed a final order in garnishment, ordering that Chase pay Goodfriend the $3,723.31 and the contents of the safe deposit box be sold to satisfy the judgment. Subsequently, Chase complied with the order, and the funds were applied toward satisfaction of the judgment.

Glassman then filed the present appeal. In her original notice of appeal, Glassman mentioned only the garnishment order. Subsequently, in an amended notice of appeal, Glassman reiterated she is appealing the garnishment order but also suggested the June 27, 2006 judgment is void.[4] She also filed in the trial court a motion for rehearing of the garnishment order and to declare the underlying judgment void. After a hearing, the trial court denied this motion.[5]

3. Apparently, the following circumstances contributed to the lengthy period between the application for writ of garnishment and the motion for final order of garnishment: Glassman refused to open the box on a certain date, in defiance of a court order; between service of the writ of garnishment on Chase and the time Glassman was required to open the box (per the court order), Chase did not place the box on "restriction," Glassman accessed it four times, and she added a signatory, who accessed it once; and Goodfriend had to obtain another court order allowing Glassman's daughter to open the box.

4. Although Glassman referenced the "June 9, 2006" judgment, we presume she meant the

June 27, 2006 judgment because the action on June 9, 2006 was the bench trial.

5. As demonstrated above, Goodfriend's seemingly straightforward request for an accounting and distribution, as clearly required under the trust, spawned trial court proceedings that lasted almost five years, due in part to Glassman's defiance of various court orders and failure to fulfill her duties as trustee. We have detailed only the proceedings necessary to present a complete background. However, we note that there were numerous other filings, mostly by Glassman, which are not germane to this appeal, such as motions for rehearing of various court orders; at least four motions for judgment nunc pro tunc

## GLASSMAN'S APPEAL

In her four stated appellate issues, Glassman contends the trial court erred by violating Glassman's due process rights under the United States and Texas constitutions and by rendering the April 30, 2009 final order in garnishment (hereinafter "the garnishment order"), the June 27, 2006 judgment (hereinafter "the judgment"), and the initial January 31, 2005 order requiring an accounting from inception of the trust (hereinafter "the initial accounting order").

Preliminarily, with respect to Glassman's first issue, she generally suggests the trial court violated her constitutional rights by engaging in "a pattern of disregard of facts, law and jurisdictional standards" and other "irregularities," exhibiting bias against Glassman, and disregarding the "Judicial Canons of Ethics." This argument seems to be based solely on Glassman's other contentions in this appeal. Although these other contentions are not exactly clear, we have endeavored to glean her complaints.

■■■ Glassman presents no independent complaints regarding the garnishment order. Rather, she challenges the garnishment order by assailing the judgment on which the garnishment order was based, as well as the initial accounting order and the July 20, 2005 contempt order (hereinafter "the contempt order"). However, she did not timely appeal the judgment because she filed her amended notice of appeal, first mentioning the judgment, more than three years after it was signed. *See* Tex.R.App. P. 26.1 (providing notice of appeal must be filed within thirty days after judgment is signed or within ninety days if any party timely files motion for new trial, motion to modify, motion to reinstate, or request for findings of fact and conclusions of law).[6] Glassman's timely appeal of the garnishment order cannot also be deemed a timely appeal of the judgment; although a garnishment action is ancillary to an underlying suit, the action is a separate proceeding and thus appeal from a final judgment in garnishment lies independently of the underlying suit. *See Varner v. Koons,* 888 S.W.2d 511, 513 (Tex.App.-El Paso 1994, orig. proceeding).

Apparently acknowledging she failed to timely appeal the judgment, Glassman argues the trial court lacked subject matter jurisdiction to render the judgment and it is therefore void. *See Alfonso v. Skadden,* 251 S.W.3d 52, 55 (Tex.2008) (recognizing that lack of subject matter jurisdiction may be raised at any time, including in action to enforce underlying judgment, if void for lack of jurisdiction); *Browning v. Prostok,* 165 S.W.3d 336, 346 (Tex.2005) (stating that only void judgment, which includes judgment rendered by court lacking subject matter jurisdiction, may be collaterally attacked); *Stewart v. USA*

(some filed several years after the applicable order or judgment), which the trial court denied because the complaints raised were not clerical errors but challenges to the substance of the orders or judgments; objections to the denial of these motions; and a request that the court review testimony provided by Goodfriend and her attorney in a State Bar of Texas disciplinary proceeding against Glassman.

6. An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. Tex. R.App. P. 25.1(f). To the extent Glassman's failure to mention the judgment in her original notice of appeal could be considered a "defect or omission," which she was permitted to correct via an amended notice, she nonetheless did not timely appeal the judgment via her original notice because it was filed two years and ten months after the judgment was signed. *See* Tex.R.App. P. 26.1.

*Custom Paint & Body Shop, Inc.,* 870 S.W.2d 18, 20 (Tex.1994). (recognizing that party seeking to dissolve writ of garnishment by assailing underlying judgment is waging collateral attack and must show judgment is void).

■ Although pertinent provisions have since been recodified, Texas Probate Code section 5(e) was the statute governing jurisdiction in this case. Under the version of section 5(e) in effect when Goodfriend filed her original petition, a statutory probate court had concurrent jurisdiction with a district court in "all actions involving an inter vivos trust." *See* Act of May 28, 2003, 78th Leg., R.S., ch. 1060, § 2, 2003 Tex. Gen. Laws 3052, 3053 (amended 2005 and 2009), *repealed by* Act of June 1, 2009, 81st Leg., R.S., ch. 1351, § 12(h), 2009 Tex. Gen. Laws 4273, 4279. Goodfriend's claims in the underlying suit were actions "involving an inter vivos trust." Further, by the time Goodfriend filed her second amended petition adding claims for damages against Glassman, the Legislature had amended section 5(e) to also provide that a statutory probate court has concurrent jurisdiction with a district court in all actions "against a trustee." *See* Act of May 23, 2005, 79th Leg., R.S., ch. 551, § 1, 2005 Tex. Gen. Laws 1476, 1477 (amended 2009), *repealed by* Act of June 1, 2009, 81st Leg., R.S., ch. 1351, § 12(h), 2009 Tex. Gen. Laws 4273, 4279.[7]

■ In all of Goodfriend's petitions, she alleged the trial court had jurisdiction under Probate Code section 5(e) and specifically referred to Glassman as "trustee" of the "inter vivos trust." Glassman does not seem to dispute that a statutory probate court has jurisdiction over a suit involving an inter vivos trust and a suit against a trustee, and she acknowledges that Goodfriend pleaded these jurisdictional grounds. Nevertheless, Glassman argues that Goodfriend failed to prove the trial court's jurisdiction. However, the Supreme Court of Texas has stated,

> In order for a collateral attack to be successful the record must affirmatively reveal the jurisdictional defect. It seems to be the settled rule that if the record in the cause does not negative the existence of facts authorizing the court to render the judgment, the law conclusively presumes that such facts were established before the court when such judgment was rendered, and evidence dehors the record to the contrary will not be received.

*Alfonso,* 251 S.W.3d at 55 (quoting *White v. White,* 142 Tex. 499, 179 S.W.2d 503, 506 (1944)).

■ The record in this case actually demonstrates the existence of jurisdiction; Goodfriend attached to her original petition the trust instrument showing Glassman was trustee and the nature of the trust was inter vivos because it benefitted the parents during their lifetimes. *See Black's Law Dictionary* 1651 (9th ed. 2009) (defining "inter vivos trust" as "[a] trust that is created and takes effect during the settlor's lifetime").

■ Glassman cites no evidence negating these facts, as indeed she cannot because they were never in dispute. In Glassman's own pleadings, such as her original answer to the underlying action and her counterclaim, she referred to herself as "trustee" and to the "inter vivos trust." These clear and unequivocal statements constitute judicial admissions of the

7. When repealing section 5(e), the Legislature enacted Probate Code sections 4G and 4H, which likewise grant a statutory probate court jurisdiction over actions involving an inter vivos trust and actions against a trustee. *See* Tex. Prob.Code Ann. §§ 4G, 4H (West Supp. 2009). However, the former codification—section 5(e)—is applicable to the present case, although the law remains the same. *See id.*

underlying facts necessary to establish the trial court's jurisdiction. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000) ("A judicial admission must be a clear, deliberate, and unequivocal statement ... and occurs when an assertion of fact is conclusively established in live pleadings ....").

■ Glassman also contends the trial court lacked jurisdiction to sign the initial accounting order and the contempt order. Glassman has not directly appealed these orders; thus, she apparently assails them to support her ultimate contention that the garnishment order, from which she does appeal, was invalid. Because the garnishment order was rendered to aid Goodfriend in collecting the judgment, we can discern no reason why an attack on the initial accounting order or contempt order, even if successful, would affect validity of the garnishment order. However, Glassman generally asserts that the initial accounting order "tainted everything that followed." Therefore, she apparently suggests that the alleged invalidity of the initial accounting order, as well as the contempt order, somehow caused the judgment which followed to be void, which would in turn require reversal of the garnishment order. Again, we discern no reason why any invalidity of these orders would negate the trial court's jurisdiction to render the judgment that followed.

■ Nevertheless, Glassman argues the initial accounting order did not conform to the oral ruling by the associate judge who conducted the hearing on the request for accounting because the written order required an accounting from "the date of [the trust's] inception to current date" whereas the associate judge purportedly required only an "updated accounting." This complaint is not an attack on the trial court's jurisdiction. "Jurisdiction" refers to a court's authority to adjudicate a case. *Reiss v. Reiss,* 118 S.W.3d

439, 443 (Tex.2003) (citing *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex. 2000)). Errors that would not make a judgment void, such as a court's action contrary to a statute, constitutional provision, or rule of civil or appellate procedure, make a judgment merely voidable and must be attacked within prescribed time limits. *BancorpSouth Bank v. Prevot,* 256 S.W.3d 719, 728 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Reiss,* 118 S.W.3d at 443; *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (orig. proceeding); *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987)). The alleged error cited by Glassman would fall into this category and does not pertain to the trial court's authority to adjudicate the case, including the order at issue. Instead, for the reasons discussed above, we conclude the court, as a statutory probate court, had jurisdiction to render the initial accounting order.

■ The contempt order was based on Glassman's failure to comply with the trial court's May 4, 2005 judgment, which memorialized several items in the parties' mediation agreement. According to Glassman, the mediation agreement, as a contract, could not be reduced to judgment (notwithstanding that Glassman agreed to rendition of this judgment) and purportedly provided the parties would mediate further disputes. Glassman also suggests she was improperly incarcerated on the recommendation of the associate judge while an appeal of its ruling was pending in the trial court. However, we may not entertain these contentions because a court of appeals lacks jurisdiction to consider a trial court's contempt order even when it is "appealed along with a judgment that is appealable." *See In re Office of Att'y. Gen. of Tex.,* 215 S.W.3d 913, 915–16 (Tex. App.-Fort Worth 2007, orig. proceeding) (quoting *Cadle Co. v. Lobingier,* 50 S.W.3d

662, 671 (Tex.App.-Fort Worth 2001, pet. denied)). Moreover, even if we could review the contempt order, Glassman's contentions do not pertain to the trial court's authority to find contempt; instead, she effectively alleges the trial court committed various procedural or substantive errors, which would merely render the contempt order voidable.

In sum, we reject Glassman's contention that the trial court lacked jurisdiction to render the underlying judgment on which the garnishment order was based. Accordingly, we overrule her four issues and affirm the garnishment order.

### APPELLATE SANCTIONS

Goodfriend asserts that this appeal is frivolous and requests sanctions under Texas Rule of Appellate Procedure 45. *See* Tex.R.App. P. 45. On its own motion, we have granted en banc rehearing to resolve a conflict among opinions of this court on whether a determination that an appeal was taken in bad faith is required before this court may award sanctions under Rule 45. *See* Tex.R.App. P. 41.2(c), 45. *Compare Hatton v. Grigar*, No. 14–03–01210–CV, 2004 WL 583045, at *2 (Tex. App.-Houston [14th Dist.] Mar. 25, 2004, no pet.) (mem. op.), *with Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 66 (Tex.App.-Houston [14th Dist.] 1998, no pet.).

Under former Texas Rule of Appellate Procedure 84, appellate courts in civil appeals were authorized to award "damages for delay" only if they found that an appellant had taken an appeal "for delay and without sufficient cause." *See* former Tex. R.App. P. 84. Courts construing this rule, including this court, determined that, before an appellate court could award Rule 84 damages, it must conclude the appeal was both objectively frivolous and subjectively taken in bad faith. *See Winrock Houston Assocs. Ltd. P'ship v. Bergstrom*, 879 S.W.2d 144, 152 (Tex.App.-Houston [14th Dist.] 1994, no writ). Effective September 1, 1997, the Supreme Court of Texas revised the appellate rules and changed the language regarding the prerequisites for appellate sanctions. Rule 45, the new rule governing appellate sanctions, does not contain any language that would make bad faith a prerequisite for appellate sanctions. *See* Tex.R.App. P. 45.

Nonetheless, this court continued to follow the legal standard from former Rule 84 (requiring both a frivolous appeal and bad faith) in Rule 45 cases. *See Azubuike*, 970 S.W.2d at 66 (denying request for Rule 45 sanctions because record did not show appeal was frivolous and brought in bad faith). Once this court had applied the standard from former Rule 84 to Rule 45, many panels of this court followed suit based upon horizontal stare decisis.[8] *See, e.g., Anderson v. Matthews*, No. 14–05–01286–CV, 2007 WL 2447263, at *4 (Tex. App.-Houston [14th Dist.] Aug. 30, 2007, no pet.) (mem. op.) (following *Azubuike* precedent). Other panels of this court concluded that an objectively frivolous appeal is the only prerequisite for sanctions under Rule 45. *See, e.g., Hatton*, 2004 WL 583045, at *2. The Supreme Court of Texas has not yet addressed this issue, which we now consider en banc.

█ Texas Rule of Appellate Procedure 45 provides:

> If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative,

---

8. *See Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.-Houston [14th Dist.] 2010, no pet.) (stating that a panel of this court is bound by prior holding of another panel of this court absent a decision from a higher court or this court sitting en banc which is on point and contrary to the prior panel holding or an intervening and material change in the statutory law).

after notice and a reasonable opportunity for a response—award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

Tex.R.App. P. 45. Under the plain meaning of Rule 45, this court may award just damages if, after considering everything in its file, this court makes an objective determination that the appeal is frivolous. *See* Tex.R.App. P. 45; *Smith v. Brown,* 51 S.W.3d 376, 381 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (en banc). This determination may be made on the motion of any party or on this court's own initiative, after notice and a reasonable opportunity for a response. *See* Tex.R.App. P. 45. Unlike former Rule 84, there is no language in Rule 45 requiring a determination that the appeal was taken in bad faith before this court may award sanctions. *See id.* Therefore, we hold that such a determination is not required for this court to award just damages under Rule 45. *See Smith,* 51 S.W.3d at 381. We disapprove of all portions of prior opinions of this court to the extent the court concluded otherwise, including, but not limited to, the Rule 45 analysis in the following cases: *Alexander v. Alexander,* No. 14–09–01092–CV, 2011 WL 1123530, at *5 (Tex.App.-Houston [14th Dist.] Mar. 29, 2011, no pet. h.) (mem. op.); *Vance v. Tamborello,* No. 14–09–00798–CV, 2010 WL 4217527, at *3 (Tex.App.-Houston [14th Dist.] Oct. 26, 2010, no pet.) (mem. op.); *Osaka Japanese Restaurant, Inc. v. Osaka Steakhouse Corp.,* No. 14–09–01031–CV, 2010 WL 3418206, at *4 (Tex.App.-Houston [14th Dist.] Aug. 31, 2010, no pet.) (mem. op.); *Young v. Galveston Bleak House Realty,* No. 14–08–00698–CV, 2010 WL 2784339, at *6 (Tex.App.-Houston [14th Dist.] Jul. 15, 2010, no pet.) (mem. op.); *Vance v. Tamborello,* Nos. 14–09–00231–CV, 14–09–00315–CV, 2010 WL 1655489, at *4 (Tex.App.-

Houston [14th Dist.] Apr. 27, 2010, no pet.) (mem. op.); *Hamilton v. Childs,* No. 14–09–00719–CV, 2009 WL 5149918, at *1 (Tex.App.-Houston [14th Dist.] Dec. 31, 2009, no pet.) (mem. op.); *Cantu v. Maher,* No. 14–07–00584–CV, 2009 WL 2589253, at *4 (Tex.App.-Houston [14th Dist.] Aug. 25, 2009, pet. denied) (mem. op.); *Lively v. Henderson,* No. 14–05–01229–CV, 2007 WL 3342031, at *5–6 (Tex.App.-Houston [14th Dist.] Nov. 13, 2007, pet. denied) (mem. op.); *Anderson v. Matthews,* No. 14–05–01286–CV, 2007 WL 2447263, at *4 (Tex.App.-Houston [14th Dist.] Aug. 30, 2007, no pet .) (mem. op.); *Yazdchi v. Chesney,* No. 14–05–00817–CV, 2007 WL 237697, at *2 (Tex.App.-Houston [14th Dist.] Jan. 30, 2007, no pet.) (mem. op.); *Nguyen v. Intertex,* 93 S.W.3d 288, 299–300 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Chapman v. Hootman,* 999 S.W.2d 118, 124–25 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

▮▮▮▮ Nonetheless, this court still may consider a party's bad faith in taking an appeal, for example, when determining the amount of just damages to award under Rule 45. *See Smith,* 51 S.W.3d at 381. Rule 45 does not mandate that this court award just damages in every case in which an appeal is frivolous; rather the decision to award such damages is a matter within this court's discretion, which we exercise with prudence and caution after careful deliberation. *See* Tex.R.App. P. 45; *Smith,* 51 S.W.3d at 381. To determine whether an appeal is objectively frivolous, we review the record from the viewpoint of the advocate and decide whether the advocate had reasonable grounds to believe the case could be reversed. *See Smith,* 51 S.W.3d at 381.

▮▮▮ The right to appeal is most sacred and valuable. *Id.* However, spurious appeals unnecessarily burden parties and our already crowded docket, and we will not

permit them to go unpunished. *Id.* No litigant has the right to put an opposing party to needless burden and expense or to waste this court's time, which otherwise would be spent on the important task of adjudicating valid disputes. *Id.*

Considering the record, particularly the totality of the following factors, we conclude that this appeal is frivolous because, reviewing the record from Glassman's viewpoint, she had no reasonable grounds to believe the case could be reversed:

- she presents no independent basis for reversing the garnishment order from which she appeals;
- instead, she attempts to challenge the underlying judgment on which the garnishment order was based although an appeal of the judgment is clearly time-barred;
- she tries to circumvent her failure to timely appeal the judgment by arguing the trial court lacked jurisdiction although the record clearly demonstrated jurisdiction, she admitted in her pleadings the underlying facts demonstrating jurisdiction, she reiterated these facts at the outset of her appellate brief before proceeding to challenge the trial court's jurisdiction, and she directly acknowledged the court's jurisdiction in her counterclaim;[9]
- the various attacks on the underlying orders cannot possibly be characterized as jurisdictional arguments and nonetheless do not affect validity of the judgment or garnishment order;
- the law is well established that we may not consider the contempt order.

We recognize that Glassman's acknowledgement in her counterclaim of the trial court's jurisdiction, as distinguished from her admission of the underlying facts, would be insufficient alone to establish jurisdiction if it did not otherwise exist because subject matter jurisdiction cannot be conferred by consent or waiver. *See Dubai Petroleum Co.*, 12 S.W.3d at 76. However, this acknowledgement at least reflects Glassman knew the trial court otherwise had jurisdiction and thus influences our decision that sanctions are justified based on her now advancing the opposite position. Moreover, Glassman is an attorney, albeit appearing *pro se* on appeal; therefore, she cannot claim ignorance of the law to excuse her unmeritorious attack on the trial court's jurisdiction or to negate her acknowledgement of jurisdiction in the counterclaim she personally signed.

Accordingly, pursuant to Rule 45, we award just damages to Goodfriend against Glassman in the amount of $2,500.

---

9. In her counterclaim, Glassman pleaded, "Jurisdiction of this suit lies in Harris County, Texas for the following reasons: a. In accordance with Tex. Civ. Pract. & Rem.Code Ann. Ch. 37.005 because it relates to a Trust *that is subject to the jurisdiction of this Court.*" (emphasis added).